Last case this morning is United States against Cedric Hodges. Mr. Shepard, you may begin whenever you're ready. Thank you, Judge Porter. May it please the court, Tim Shepard from the Office of the Federal Public Defender on behalf of the appellant Cedric Hodges. I want to thank you all for giving us a little bit of extra time for the argument today, and I would like to reserve three minutes for rebuttal if I could. Granted, thank you, Judge Porter. Mr. Hodges is currently serving life in prison for a series of carjackings he maintains he did not commit. We've raised a number of trial and sentencing issues on appeal, but we're going to focus on the four issues the court identified today, which are the officer impeachment issue, the allocution error, the government's untimely obstruction enhancement, and the district court's discounting of mitigating evidence. I'm going to start with the officer impeachment issue. This court should vacate Mr. Hodges' conviction because the district court abused its discretion by invoking the rarely invoked Rule 403 to prohibit otherwise permissible 608 impeachment evidence. So the court has broad discretion under 403, so it's an abuse of discretion standard, right? Yes, it is an abuse of discretion standard, and I agree that there is a broad discretion for the court to invoke Rule 403. I don't think that it complied with Rule 403, and there are examples of courts, including the D.C. Circuit, reversing and vacating on 403 errors, including the Whitmore case. Sorry, did you have another question? Okay. The district court dramatically understated the probative value and overstated the prejudicial value. It was only allowed to exclude this impeachment if the government could show that the probative value was substantially outweighed by any prejudice. Here, the district court said there was virtually no probative value. That is untrue as a matter of law. Rule 608B, which was conceded to apply, makes it probative. It is always probative for a testifying witness to- The person was picked up for a DUI a year before. Is that correct? It's actually after. It was after the incident, but before the trial, correct? Right, before trial is what I meant. And the court was having some difficulty understanding how it really related. I guess the argument would be related to this person's veracity at trial. Yes. And the court said, we're not going to bring that in. It leads us down a path that's not what we're here for. It's tough to say that's an abuse of discretion. I understand the court's skepticism because, again, abuse of discretion is a difficult standard. But, again, by not even acknowledging the probative value, which there is probative value to assessing the credibility of a witness, the court abused discretion. And the type of prejudice that it invoked and the government invoked is the type of thing that would apply in any case. There wasn't some type of unique prejudice here. The government simply said, well, the jury may speculate about other details of the DWI, but that's easily remediable by limiting instruction, which we presume juries will follow. And I do think that the information was probative here for a number of reasons, not just what came out of trial, which I think evinced even greater probative value. The incident with the DWI, the officer, Piotrowski, repeatedly lied. He also falsely accused the other driver of causing the accident. So I'm not saying that these are apples and apples exact cases, but there is probative value to knowing that this is a person who is comfortable falsely accusing somebody else of something. But fundamentally, I think the court just underestimated the probative value, overweighed the prejudice for the government, which this court has said in Carino, the district court should not weigh prejudice towards the government before the defense has an opportunity to put on its case. And ultimately, I think the court was addressing ordinary prejudice that occurs in any 608B, 609, 404B case and determined that it substantially outweighed, but that was abuse of discretion. It also was... Sorry. No, no, go ahead. Could you go to the allocution? Yes. Thank you. And I understand the court's focus on the fourth prong. I'm not going to spend, unless the court has any questions on the first three prongs of allocution, I believe it's pretty clear this was an error and it was prejudicial. On the fourth prong, no doubt this court has discretion to determine whether the error seriously affected the fairness, integrity, or public reputation. This court has articulated something of a unique standard in allocution cases, where it typically remands for an allocution error, except in cases where the error was isolated or abstract error that didn't really impact the proceedings. That's what was said in Palladino, in Plotz, and in Adams. This is not one of those cases. The court identified the question of whether or not the fourth prong should be invoked where the defendant has not committed to allocuting already. I spoke to Mr. Hodges yesterday and I can represent, he does want to allocute, but I'm nervous about having that be part of the prong for analysis. If he does, why wasn't that brought up at the sentencing? I want to stick mostly to the record, but again, he was not advised of his right to allocute. That's the error. The district court didn't say to him, you have a right to allocute, would you like to allocute? Again, all I can say is that today he wants to allocute, but again, the error happened. I'm concerned that by making this part of the prong for analysis, we would effectively be relying on out of record evidence, which is what I'm offering. Again, what he told me yesterday is not part of the record. That's exactly the reason why the 10th Circuit, Bustamante-Conschest, cautioned against going down this route and explained that we should not be requiring people to commit to allocuting, saying what they're going to allocute, because that's not record evidence. It also creates potential Fifth Amendment issues. I have no idea if the court could require Mr. Hodges to allocute because I've represented that he's going to. Basically, at the sentencing, Mr. Hodges, this is your sentencing hearing. He addressed Hodges, but then he looked at the defense counsel. I don't know if you've discussed this. I presume you have. Mr. Hodges is not required to speak at his own sentencing. Defense counsel response, he didn't intend to give a statement, your honor. District court said, okay, no statement whatsoever. I appreciate it. It sounds like counsel spoke. If Mr. Hodges wanted to say something, he could have said, no, I think my counsel's got it wrong. I do intend to give a statement. The same thing would have been true in a number of this court's precedents. In the Adams case, the Palladino, in some of these cases where counsel was addressed and counsel said that client did not want to test or allocute, they still found error because in the Supreme Court case in green and in rule 32, it is made very clear that the defendant has to be personally addressed and invited to allocute. This certainly was an error under the court's precedent and it was certainly prejudicial insofar as that might weigh on the fourth prong. I don't know that we could dive into the intents of the counsel and of Mr. Hodges for why he didn't volunteer to allocute when he wasn't invited to do so. Again, all I can say is that right now he wants to, but that has never been a part of this court's allocution case law. It has never been in all of these cases, Adams, Palladino, Plotts, Hunter, some of these other NPOs, the court has never required a defendant to commit to allocuting. Even if we were to consider what he now says, wouldn't we also be allowed to consider what his counsel said in the moment, which is that he has no intention to give a statement? I mean, he's speaking for his client. Are we considering that, just to make clear, are we considering that for prong one or for prong four? Four. I mean, the court has a great deal of discretion. So I agree that the court has discretion. I don't know that second guessing how strong an error it was, because that really seems to be about like, was this a really bad error? Because the defense counsel seemed to have said, well, he didn't want to allocate anyway. It doesn't really change the error that took place. It's not about whether there was error, but whether he actually intended to allocate, notwithstanding what he now says. Yes. So I don't think the question is whether he intended to allocate. I think the question is whether he would allocate now. And I think the question is, in that moment, if he is personally advised of the right and personally invited to allocate by the district court, what did he decide? If he made some decision with defense counsel ahead of time, it doesn't resolve the problem. The court has to tell him of the right. The court didn't even tell him he had a right to allocate. It said you don't have to talk. So I do think that it's the type of thing where we should allow it to go back, follow the normal course, the rule 32 course, have Judge Qureshi correctly advise him of the right, look him in the eye, invite him to allocate. I know it's not textbook, but when you say you don't have to talk, doesn't that imply that you may talk? Maybe. I don't think that it comports with the strict way that the Supreme Court and this court have construed allocution. This court has been pretty clear. You have to personally invite him. You have to personally tell him of the right. And here, it just simply didn't do that. And this would be a sea change in the allocution law if this were a new requirement as part of prong four that somebody had to meet. Otherwise, I mean, I think the government's cases that it cites are clear examples of the type of isolated or abstract error that is where this court would typically not remand. Greenspan, Packer, these are cases where the defendant quite literally did allocute and where the defendant obtained a benefit. That's not what we have here. That, I think, is the type of case that is the unusual outlier case where it was isolated or abstract. This is not that case. This is pretty similar to Adams, Palladino plots in those cases. I do want to turn to the sentencing issues, if the court doesn't have any other questions on the allocution. On the sentencing issue, I know the court identified two. I just want to reiterate, we do believe that the 4A1.3 departure was erroneous, what we called a de facto career offender. And I would ask the court to rule in our favor on that to avoid creating a circuit split on this issue where it's the body of case laws on our side. But I don't want to waste the court's time. I want to talk about the obstruction and the mitigation issues. The obstruction enhancement issue is relatively straightforward, I think. The government failed to timely object. They objected and asked for an obstruction enhancement six months after the deadline. Under 32F, that was a violation. The rules provide a remedy. If the government wants to file an untimely objection, it can invoke good cause under Rule 32I. It failed to do so. The district court made no good cause finding. The district court acknowledged the objection was untimely, but said that it has to consider the issue anyway, that it has to find it because it has an obligation to get the guidelines correct. This was, I think, straightforwardly a violation of the rules. It was also a violation of the party presentation principle articulated in PAYO, which cautions against district courts applying forfeited enhancements. I think the court's question frames the issue correctly. What is the remedy for this? Simply put, the remedy is Rule 32I. The government very easily could have shown good cause, offered some explanation for why it had not timely objected to the obstruction enhancement. It failed to do so. That's the thing. I think the court's view of good cause is, look, I need all the information that I can get in order to allow me to calculate the sentence of the guideline range. Why isn't that sufficient good cause? If that were good cause, it would apply in any case. In any case, the court could say, well, I want to get it right, so I have to get it right, and I'm going to calculate this. Then the rule would be swallowed on itself. If there was no requirement to make a timely objection, if you didn't have to show good cause, all you had to do is have a meritorious argument, then the Rule 32 wouldn't matter. You could just always present a meritorious argument. It would render 32F a nullity. I can say there are certainly times where district courts exercise this discretion not to consider untimely objections. I think it should have exercised that here, but it didn't evince an understanding that it had discretion. It said, I have to consider this. I have to get the guidelines right. It absolutely had discretion to require the government to show good cause and to ignore the untimely enhancement. I do also think those are the types of arguments here was what? Life plus 262. Would this obstruction enhancement change anything? It would certainly change the guidelines. It would certainly change the guidelines calculation, which I assume we're talking about harmless error now. This court has said that harmless error is exceedingly rare, that we should find harmless error in rare cases, but the court has to get the guidelines right. This court has never said that if this would change the guidelines, but we assume that you can imagine the judge saying, I agree with what you just said. I've got to get the guidelines right. Therefore, I thought it was important that I at least entertain this request. It's maybe it's theoretical, not practical in this particular case, but why isn't that sufficient good reason for the judge to say exactly what you just said? It's important to get the guidelines right. Because again, if the importance to get the guidelines right, Trump's party presentation and Trump's rule 32, then the rule 32 requirements would be a nullity. I mean, the same argument could have been made, and I think was in part made in the payout case that there's an obligation to get it right. We're going to find this career offender enhancement here, but the court rightly pointed out that it may be laudable. I think the word was laudable to get these things right, but there is still this party presentation principle. Did the district court vary upward separately? Would this have affected that? When we're determining the guidelines, it would have affected the guidelines. The court, I think, made multiple variances, whether it's clear or not. There's a three-level variance, which we might normally think of as a departure, but there's a three-level variance from 37 to 40. But then it also ran certain sentences concurrently, but yes, it varied. But the question is not whether or not it affected the ultimate sentence. The court has said in cases like Langford, Raya, that it matters what they did with the guidelines. And the variance, that's a 35-53A consideration, and they should have been tethered to the correct guidelines, which in this case, we argue is a 35 and a criminal history category of three, which would have made an extraordinary difference. And even from that basis, a three-level upward variance would not have gotten this to a life sentence case. Did I answer the, I want to make sure I answered the question. Okay. So I do want to briefly, I see I only have about a minute remaining. I want to briefly address the other sentencing issue, the mitigation problem. And I think the two issues kind of work together. As I see the obstruction issue, the district court excused the government strict compliance with rule 32. As I understand the mitigation issue, the district court enforced strict compliance by Mr. Hodges with a non-existent rule. Mr. Hodges spoke with probation, gave certain mitigating information to probation, but then also met with a mitigation expert with funds that the court authorized multiple times during which time additional abuse came out, specifically abuse by a stepfather. The district court at sentencing without notice to the parties said, I have concerns about this. Why didn't you tell probation? And because it didn't go to probation first, I have to give this less weight. I have to determine what level of weight to give this because it didn't go to probation. There is no such rule that requires mitigation evidence to go to probation. And it would not be a very workable rule anyway, but ultimately there is no such rule. And the district court in invoking that rule actually hamstrung its own discretion and did not execute the discretion we expect them to, to consider mitigation arguments from the parties at sentencing. I see that I'm out of time. If there are any questions, I'm happy to answer them, but I can also just see you all in rebuttal if you'd prefer. Yeah. Okay. Thank you. Thank you. May it please the court, John Romano for the United States. I have to say it's somewhat of a daunting task to follow Bob Zosmer, but I will do my best. Starting with the impeachment issue, rule 403, despite what Mr. Shepherd says is not sparingly invoked. It's invoked all the time. It's probably the most invoked rule there is. And this court has invoked it to limit, to, to affirm limitations on cross-examination. It did that in Ellis and Jimenez and Johnson. It's a 403 balancing here and 403 balancing is, is entitled to the greatest deference there is. And judge Kouroshy, I think did a commendable job of balancing what was very limited probative value here against the resulting prejudice. Judge Ambrose, I know you have in the cross opinion, you said something along the lines of, you know, where there's great probative value, there can be great prejudice. Well, here there was pretty much little probative value. And so it required just little prejudice to exclude it. It was a statement given four and a half years later where he was drunk. Does that really weigh that much on his character for truthfulness? One could see a, a logical argument being made that if he did not receive a DUI, the officer could have been impeached for something on his testimony, but because he did receive a DUI, that conviction actually kind of shields him from being impeached with regard to something that he could be impeached with. I don't think that's, that's what the court was finding. I think that was, that court was finding that was part of the prejudice is maybe this would open up this sort of can of worms. But I think what he was mostly focusing on was the very limited probative value here. And let's look at what was actually at issue here. The defendant in his motion, this is page 213 of his motion, admitted, conceded that officer Piotrowski found the mask. That was never at issue. So the only, only thing that was at issue at the time of the motion was, well, of course you could impeach anybody on credibility. Sure. But this officer in particular, there was very little to that. His credibility was not really at issue to begin with. Pretty much his entire testimony was here's the videotape of me in the car, and then here's my body worn camera. And here's what I did. And it's all on camera. So there's almost nothing that he says, that's not based on just video that the jury is watching. Now, later on the defendant on cross-examination says, oh, well, someone planted this mask on me. The question is, was it officer Piotrowski? The answer is, I don't know. Someone must've done it. And that's it. And he doesn't, obviously, I don't think you can look back and say, okay, judge Quarashi got it wrong because he didn't know that was going to happen. And the defendant didn't say, you know, I think you should reopen that hearing so I could make this point. So what was before judge Quarashi was, there was basically very little probative value. It was going to open up a can of worms. And again, there's a question of there's someone who's drunk, who says something. Is that really that probative as to his truthfulness? Sure. I will focus almost entirely on prong four, but I do want to make one quick point on prong three. I would ask this court to go back and look at Adams because Adams is doing exactly what the defendant says that the government, that we can't do here. In Adams, the court said we had this 1960 something ruling called Aligrucci, which didn't apply plain error review to an unpreserved allocution claim. But Adams said, but look what's happened since then. The Supreme Court has decided a bunch of plain error cases, not in the allocution context, just general plain error cases. And so we think we need to re-look at Aligrucci. And that's exactly what this court did. And I think that's exactly what's happening here too. We have Adams. Adams is from 2001. Since then we've had about five, maybe four, five, six Supreme Court plain error cases that make clear it is the defendant's burden to show prejudice. And so I would just ask this court to look at Adams and consider whether the ensuing cases have really sort of undermined Adams' presumption of prejudice. On the prong four issue, your honor, Greenspan says case by case, delving into each case's particular facts, look at the seriousness of the error in the context of the entire case. So it's not a per se reversible thing on prong four. We have to look at the facts of each case. And I appreciate the defendant now saying, oh, I will allocute. But I think Judge Porter, I think you brought this up. What would he have done? In all of this time, we have never heard once that he would have allocated. If Judge Quiroshi just made it a little bit clearer. I'm not even sure, your honor, that there was an error. I think he could have been clearer about his asking the defendant if he wanted to allocute. But if he had turned to him and simply said one sentence. Although, you know, consensus is usually done by rote. I mean, you have a right to allocute. Sure. And I do think he could have been clearer. And I also think we're working off a transcript here. We don't know what was going on in the courtroom. I'm sort of told that he was looking at the defendant, that there was a pause. But regardless, what if he had looked at him and said that, would he have allocated? We have never heard in the opening brief. We haven't heard on the reply. We don't hear now. And I just want to point to three cases, your honor. Two of them are plain error cases. One of them is a plain error allocation case. And just look at the language. Is that a requirement, just so I know where you're going, counsel? Is it a requirement that we, counsel, now affirmatively represent what the defendant would have done? I think he should have to represent that he would have allocated. That's the error. Why? What is the result of the error? And again, Judge Ambrose, you wrote the Montez opinion from last year. That was about a notice issue. And this court was very clear about zeroing in on the error and then homing in on what was the resulting prejudice. This is a quote. The inquiry focuses on what would have happened. Here's another quote. Notice would not have changed the argument raised. The defense does not argue that notice would have changed. Let's look at Greer. That's the Supreme Court's Rehaith plain error case. If a defendant does not make such an argument or representation on appeal, the appellate court will have no reason to believe that the defendant would have presented such evidence to a jury. And finally, Packer. This was an allocution case where the judge basically announced the sentence and then allowed the defendant to allocate afterwards. And this is what the court said. Nor has he said to us that there are additional mitigating factors or distinctive characteristics that he would have stated at his revocation proceeding had the district court not prematurely forecasted the sentence to be imposed. Here, there's no reason to think he would have allocated. Up until this second, we didn't know he thinks he will allocute. What would be the point of sending this back for the mere technical error so that judge could look at him and say, do you want to allocate? And he could say no. I mean, that's not what plain error is supposed to be. Turning to the obstruction point, I still don't understand the party presentation aspect of this. The government raised the obstruction point three weeks before sentencing, two weeks before the defendant's brief. It was fully briefed. Judge Quarashi had the right under Rule 32 to excuse the late notice and to hear it. And I think, Judge Amber, this goes to your point. This is the old Justice Frankfurter quote, right? Wisdom too often never comes, so one ought not to reject it merely because it comes late. The judge wanted to get it right. This was fully briefed. In fact, there was nothing too brief. If you look at the first couple of pages of the defendant's testimony and compare it to the jury's he lied a trial. The jury rejected literally everything he said to the tee. My old boss, Judge Barry, would have said game, set, and match because there was nothing to dispute. There was nothing too brief. And so Judge Quarashi didn't abuse his broad discretion by saying, you know what? I'm going to hear this obstruction enhancement now. And I don't think to get to the court's, I guess, focus letter, I don't think there should be any remedy for not specifically saying what's the good cause. Numerous courts have said it could be implicit. I cited a case in the brief, the Henderson case. Let me provide one more that I sent to Mr. Shepard earlier this week. This came out in 2026. It's a Seventh Circuit opinion, United States versus Slater. The citation for that is 168 F. 4th, 1044. That's another case where the court didn't specifically address good cause and the Seventh Circuit said, okay, it's implicit. You considered it. It's not an abuse of discretion to do that. You want to get it right? Great. Um, if the court has no questions on obstruction, I'll move on to the mitigation issue. Um, you know, I, I think it's sort of ironic that the defendant is making a big deal about the government submitting the, you know, making the obstruction enhancement three weeks before sentencing. And then he drops on the court and the government, a mitigation report, a psychological report that includes new information a week before sentencing. And that's not considered an issue. Um, Judge Quarashi didn't reject it out of hand. Judge Quarashi, in fact, credited it. He said, there's no reason to believe that he had to overcome adversity. He's not taking the position that Hodges was being untruthful. This is at 1407, 1401. He merely found that that mitigation evidence was outweighed by the danger, the repeated crimes that this man had committed. And that's what sentencing courts do. That's the whole point of what sentencing courts do, bread and butter, that they, that he balanced the two things and found that he required a life sentence. Um, there's really no, I just don't think there's any issue with a court saying, you know, you had an opportunity to bring this up to probation. This is what probation does, right? Probation, this is rule 32D2A, uh, include the history and characteristics. 32D2G, any other information including relevance of the 3553A factors. D1D, identify any factor relevant to sentencing. That's what the probation officer does. It's basically make a biography of the defendant. Why would the defendant hold back mitigating information, provide it to somebody else, then dump it on the court and the government a week before sentencing? Um, I think what Judge Quarashi was, was seeing is sort of a trend in sentencing where this is happening. And I think he was making the common sense point. This is something that had to have been corroborated, had to have been corroborated during probation report. That obviously weighs more than something that's not. I don't think he was doing anything more than that. Can I make one more point? I'm sorry. Just go back to the obstruction point because Judge Mayday, you brought this up. The district court here, um, varied by three levels. If we assume that he's a criminal history category six, because Judge Quarashi upwardly departed on that basis, going from a 35 to a 38. In other words, upwardly varying by three levels brings you to the same guideline range, even without the obstruction enhancement. So it would make no difference. It does. It does not change the guideline calculation. I think I've heard different answers. Mr. Shepherd is assuming that he was still a criminal history category three. Judge Quarashi upwardly departed by three criminal history levels because of his very serious criminal history. If you include the criminal history category six, even eliminating the obstruction enhancement. So you go from a 35, if you upwardly vary by three levels, which is what Judge Quarashi did, you get to a 38. A 38 and a six is still 360 to life. And quite frankly, I think he would have, he would have varied by more if he didn't include the obstruction enhancement because everyone knows he obstructed justice by lying at trial. If you have no further questions, I would ask this court to affirm. Thank you. Thank you very much. I have to say I was a little puzzled by, um, the party presentation arguments since the, the, um, the issue was raised before sentencing and it was briefed. Yeah. So, uh, as I understand payout, the court used the language of forfeiture and I don't think it's disputed that this was forfeited. The court in pale could have used the word waiver because I think in fact the issue was waived there, but they use the term forfeiture, which applies to the failure to timely invoke, uh, uh, a right. I'm sorry, I didn't want to cut you off. Okay. But I, but I think regardless of the pale question, I do think that the rule 32 is, is a way to figure this out. The rule 32 says you have to make timely objections. And I, I thank the government for bringing up the Slater case. They did, they did send me those cases. Um, I do think Slater is distinguishable in ways that are helpful for this court Slater. The government did raise good cause in the district court. So that is a key distinction here. The government did raise good cause to, to the argument that we weren't the facts essentially identical to this one. Sorry. Otherwise weren't the facts and Slater essentially identical to this. Uh, I don't know that there are, but I don't dispute that they're, they're meaningfully they're, they're similar. They're the, their issues aren't totally different, but there are a couple of other points where I think it's distinguishable where I think Slater helps us. One, the, the defense raised the argument there of, isn't this just going to swallow the rule? The sum total of the court's explanation for that was quote, fair enough. It didn't really explain why it wouldn't swallow the rule, but it moved on to my third point, which is that there they recognized we don't have a problem here though, because the district court clearly understood that it had discretion to either impose or not impose this enhancement. The court made clear it had discretion. That's not what happened here. Judge Koreshi repeatedly said, I have to judge Koreshi felt duty bound to get the guidelines, right. And didn't appear to understand that he could have required the government to show good cause and could have not considered their enhancement, which I don't think anybody can dispute. He did not have to impose this enhancement simply because it was identified under rule 32. I do just want to briefly address a couple of the other issues on the allocution issue. I can appreciate that the is asking the court to overturn its precedent, but I think that is the bulk of its argument. Most of what the government said here today has to do with the third prong. They're talking about prejudice. They're citing other cases. They cited the Montas opinion that talks about the prejudice prong. This court has already decided the prejudice issue. And I don't think that that can then be shoehorned into the fourth prong of plain error on allocution. And then just briefly on the mitigation issue, I can understand the government saying that it seems strange that we are complaining about an untimely objection, but then we offered mitigation. But that is completely in accordance with the rules. There's a rule that requires a timely objection. The rules allow for mitigation. The rules allow for a sentencing memo. And respectfully, this is not what probation does. I understand that from the government's perspective or from some people's perspective, what probation does is just put together a history of people. They spend time with defendants. Probation have a lot of jobs. They are putting, I see them just about a time. Can I just finish this last point? Thank you. What they do is put together a history. They do not do mitigation. This court authorizes us to have mitigate. We have mitigation experts in our office. The court authorized the mitigation. There was no surprise here. Mitigation, mitigating experts do different things. They spend more time. They build a rapport with the client. And Mr. Hodges was not hiding any information. The fact that he didn't want to detail on top of horrifying sexual abuse to a stranger, he didn't want to also detail serious physical abuse by a stepfather was not a strategy. It's mitigation working the way it's supposed to. So for all those reasons, we ask the court to vacate Mr. Hodges conviction and sentence. Thank you very much. I take the case under advisement.